Okay, the last case before the court, Shire Development, LLC v. Mylan Pharmaceuticals, case number 172268. This is an appeal from a decision from the Middle District of Florida, District Court. Do you want Ms. Murphy four minutes for rebuttal? Okay, you may proceed. May it please the court, Elizabeth Murphy for plaintiff's appellant. After a four-day bench trial, after presiding over a four-day bench trial, making findings of infringement and entering judgment on that basis, the District Court here vacated those findings, reversed the judgment of infringement, and entered a judgment of non-infringement based solely on this court's decision in Watson 2. But she did have the benefit of this court's decision in Watson 2, right? That's correct. However, this court's decision in Watson 2 was not a change in controlling law that justified her reconsideration of her original judgment of infringement. Maybe the court sort of thought that in the long run it was going to be a loser? She may have thought that, but it was not proper for her to vacate her own findings and reach a judgment of non-infringement without making findings to support that judgment. I don't understand that. She certainly can vacate her own findings if she concludes that they're wrong under the law, right? She may if she actually does conclude that her factual findings were clearly erroneous. That didn't happen here. What happened here was that she found infringement of each element of Claims 1 and 3. She found every limitation met by Milan's tablet. She based her reversal on the findings of fact that led to the conclusion of non-infringement in a different case. I'm a little confused why you're talking about findings of fact. I thought the previous cases were about claim construction and concluding as a matter of law what the matrixes should be. And the findings of infringement here were based upon at least, I don't know if it was an inferred claim construction or an actual claim construction that's inconsistent with Watson 2. Well, it's our position that she reversed based on a construction that has no basis in Watson 1 or Watson 2. Watson 1 holds the correct constructions of interleuphophilic matrix and outer hydrophilic matrix. She applied those constructions to Milan's tablet and she found claim element 1A literally infringed. Sure, but then we took up again after the non-infringement finding post-Watson 1 and said, no, that's not a correct reading of our claim construction. Our claim construction means something different in Watson 2. It means no lipophilic elements in the hydrophilic matrix and vice versa. Isn't that what we said in Watson 2? I don't believe so, Your Honor. I believe that Watson 2 concluded non-infringement based on findings made by the district court in that case. That an outer hydrophilic matrix, applying the Watson 1 construction of outer hydrophilic matrix to Watson's product. I thought that our findings in Watson 2 rested on the Marcouche limitation and that we then concluded exactly what I said, that the different matrices could have no elements of the opposing ingredient. In reaching that conclusion, I believe that there were still predicate findings in order to examine whether an unrecited component is unrelated to the invention. You first have to find that the outer hydrophilic matrix consists of unrecited components. That sounds like the argument where you rejected in Watson 2. Well, to the extent there's a construction now that the claims state an inner lipophilic volume consisting of substances recited from the same element 1A list and an inner lipophilic or an outer hydrophilic volume consisting of the claim B, claim 1B compounds, we believe that construction is incorrect and a plain misreading of the actual claim. I mean, that's what you told us in Watson 2. I don't remember if you sought rehearing or certain that, but we disagreed with you. What are we supposed to do with that? I mean, we're bound. I don't understand why the district court did anything wrong here because I think she saw the writing on the wall and that even if she didn't reconsider, she was going to get reversed. Well, she's still... I don't think Watson 1 constructions of inner lipophilic matrix and outer hydrophilic matrix to Milan's product. Yes, but then she saw Watson 2 and at least the clarification there and saw that the way she had applied Watson 1 was not going to be upheld by this court. And it's the same exact argument that we heard in Watson 2. I mean, the point of Watson 2 was to say, you're misinterpreting Watson 1. And Watson 1, we need to clarify that that loophole or that different analysis was not available. Well, the extent Watson 2 is a clarification, I believe it's a precedential opinion. It's a clarification that unrecited components in the context of consisting of language must be unrelated to the invention. Predicate to that would be a finding of literal violation of either claim element 1A or 1B, which was not found here. That's the difference in the findings between the two district courts. In Watson 2, it was found that the outer hydrophilic matrix in Watson's product consisted of unrecited components. The district court here did not make that finding and there was no need to consider whether unrecited components would be unrelated to the invention. But the district court specifically found that whatever findings of fact she had made don't change the analysis. In fact, that even with those findings of facts that she made before, that after Watson 2, she now realized that the result had to be different. She relies on the result being different based on a construction that means, and I'm quoting from Appendix 7 of her reconsideration order, that the inner volume cannot contain substances not listed in the claim 1A Marcus group. And the outer volume cannot consist of compounds other than those listed in 1B. But isn't it... Sorry, go ahead. Isn't the core purpose of a motion for rehearing to give a court an opportunity to deal with, at least one core purpose, to deal with intervening authority so that they don't go ahead and perpetuate a legal error? Yes, Your Honor, that's correct. But here, we disagree that Watson 2 affected a change in intervening authority, even assuming that it did. I'll assume for purposes of argument. We sort of think so. Assuming that it did affect a change in law, it's unclear which factual findings support her ultimate judgment of non-infringement. In her reconsideration order, she purports to vacate all of her findings and her factual... Is there any real dispute that the components in Mylan's product are exactly the same components that made Watson's product non-infringing? It's the fact that there are hydrophilic elements in the lipophilic matrix and vice versa. I mean, her own opinion when she found infringement said, recognize that that was the case, but that that wasn't sufficient to avoid an infringement finding. That's the argument that was made to us in Watson 2. That's the argument we rejected and said that if it was a lipophilic element in the hydrophilic matrix, it was to be non-infringing. Are you suggesting that there's some other kind of findings she can make that would make these still infringing when it's clear that their product has lipophilic ingredients in the hydrophilic matrix, which should make it non-infringing? Well, I think I disagree that her findings show that the outer hydrophilic matrix found to infringe in Mylan's product contains lipophilic ingredients. I believe the outer volume contains lipophilic ingredients, but the question of whether- Well, if you're trying to argue a difference between the volume and the matrix, I think that's the argument that we rejected in Watson 1. Well, I think in Watson 1, it was stated that the presence at the end of the opinion that the presence of a hydrophilic excipient that may be by itself considered hydrophilic in an inner volume, for example, is a question for the fact finder. We think based on Watson 1 that that fact was- I mean, that was a factual determination that was resolved differently by the court here. And it was resolved in finding that claim element 1A was literally met. All the limitations in a claim element 1A were literally met. And I'm referring to specifically the requirements under the correct construction of inner lipophilic matrix as held by this court. We're not re-arguing that a distribution of excipients that may be classified as hydrophilic forms a hydrophilic matrix. We're incorporating this court's requirement in Watson 1 that the matrix itself exhibits those properties. There's no dispute that Milan's tablet exhibits the properties that are described in the patent at column 3, line 57 to column 4, line 5. And those are the inner and outer matrix properties. The factual issue that the district court resolved below was what was responsible for those lipophilic and hydrophilic properties. She found that the lipophilic properties were due to the presence of a matrix consisting of stearic acid and palmitic acid. Separately, she found that the hydrophilic properties were due to a matrix consisting of claim 1B compounds. We think where that is found, infringement has been established, and there's no basis to rely on other excipients in the composition to preclude a finding of infringement. You've got about four and a half minutes left. You want to save it? I would like to save that for a bottle, please. Thank you. Good morning, Your Honors. May it please the Court. Deep Ramakrishni for Milan. Your Honors, obviously, I take some issue with some of what was presented here today. And most notably is this notion that in some way the district court abused its discretion in reconsidering its decision. The fundamental precept that I think that plaintiffs are still trying to advocate is that the distribution of a singular excipient is, in fact, the matrix. Your opposing counsel conceded that the core nature of a motion for re-hearing for correcting an error demonstrated by an intervening legal authority. Yes, that's exactly right. Her point was that she didn't really think it changed the law. So Judge Honeywell admittedly, even in her reconsideration decision, said that the posture that she took was similar to that of Judge Middlebrooks' decision in the Watson case. She outright, I think, stated that. And so when Judge Middlebrooks' decision was overturned by facts that really that the court considered, and I know Shire advocates that the district court borrowed from facts in the Watson case, but that frankly is just not true. The two facts that she relied upon were one, Judge Hughes, as you noted, that Milan's ANDA product has stearic and palmitic acid and a undisputably lipophilic excipient in its outer volume, and hydrophilic excipients like CMC and SSG in its inner volume. She took those two facts and she applied them to, and I find it interesting that we're still debating inner volume versus matrix, but she applied that to the holdings of Watson 1 and 2. The compositions of the inner volume and outer volume, i.e. inner matrix and outer matrix respectively, are further limited by the Markowitz groups. And so when she found that there was the presence of these violative excipients in the respective matrices, that was the basis of the reconsideration to conform her decision more in line with this court's prior precedence. Your Honor, does Lucia have any other questions for me? Thank you. Thank you, Your Honor. So I think this all comes down to whether or not the presence of a lipophilic excipient in an outer volume is by itself preclusive of infringement, whether that's a matter of fact or law. I would submit based on Watson 1 and the statement that the presence of a hydrophilic excipient in an inner volume by itself, whether that precludes infringement is a question for question of fact was resolved here. I'd just like to quote also from the district court's reconsideration order at Appendix 7, where she characterizes this court's decision in Watson 2. The federal circuit clarified in Watson 2 that the correct construction of the Markowitz group limitations in claim elements 1a and b requires that each volume said to contain the components that satisfy the inner and outer matrix limitations be closed to unrecited elements. In our view, if you're satisfying each of the inner and outer matrix limitations, which we believe was found here and you don't need to further satisfy anything with respect to a volume because the claims do not recite a volume. Claims recite an inner lipophilic matrix consisting of substances selected from a group. The claim 1a Markowitz group substances are the matrix by operation of the claim language. The claim 1b Markowitz group compounds are the outer hydrophilic matrix. That's what the claim language says. If we agree with this argument, wouldn't we have affirmed the district court's decision in Watson 2 instead of reversed it? You keep talking about differing factual determinations, but the facts aren't different in these two cases. It's the conclusions to be drawn from those facts. Well, the fact... Yeah, that's correct, but I don't think that the fact... I mean, there's no doubt. Your friend on the other side just stood up and said, I think, asserted that their product has in the... I get mixed up the outer, inner, forgive me, but whatever one is supposed to be lipophilic, it has hydrophilic substances and vice versa for the other one. He said that. I think that's true reading the district court's opinion here. She relied on that or she noted that in her original opinion. That's not a disputed fact, is it? It's not disputed that there is... And those are the same facts that we had in Watson 2, aren't they? And from that, we found that the presence of hydrophilic excipient and the like philic matrix violated the Marcouche limitation, and therefore we reversed. Even assuming that's correct, even assuming that was your construction, I believe that the district court's reconsideration order and judgment of non-infringement reached thereupon is not supported by findings made in her own... So you think- That she found. She should have just let it go and have Mylan appeal and us reverse on the same reasoning again. If there was a change in law, then I think she was obligated to make new findings after that change in law to support her judgment of non-infringement. That didn't happen here. What happened here was she made findings... But Watson 2 didn't rely on specific factual findings. The facts are the same in your case as in Watson 2. Assuming Watson 2 is a new construction, I still think that it's unclear which portions of her findings she's relying on. If you take her reconsideration order at face value... Let's just set her reconsideration order aside. Suppose she hadn't and we were here on a direct appeal from you prevailing. What logic would you have us to distinguish this case from Watson 2? The fact that I don't think the findings in this case support a literal violation of either... Even though you agree that there are hydrophilic excipients in the lipophilic matrix and vice versa. I disagree that that was found here. I think that what was found here is that there was an... How do you disagree? They either are there or they aren't there. Well, I think it requires a distinction. They may not ultimately detract from the lipophilic... The hydrophilic excipients may not detract from the lipophilic nature, but they're there. They're there, but whether or not they detract and whether... Is a question of fact according to this court's opinion in Watson 1. I think that if you have... But not in Watson 2. Well, I think that there was found that the outer hydrophilic matrix consisted of unrecited components. I disagree that that was found here by the district court. And on that basis, we request reinstatement of the original judgment of infringement. Thank you. Okay. Case will be submitted. Court is adjourned. All rise. The Honorable Court is adjourned.